521 P.2d 1143

MOQUI, INC., an Arizona corporation, Appellant,

v.

AMBROSE AND ROSENFIELD AND COMPANY, Appellee.

No. 1 CA–CIV 2003.

Court of Appeals of Arizona, Division 1, Department A.

May 2, 1974.

Wade Church, Phoenix, for appellant.

Perry, Smith & Randolph, Ltd., by Rodney G. Johnson, Phoenix, for appellee.

OPINION

OGG, Judge.

This appeal is from an order of the superior court reinstating a previously vacated default which had been entered in favor of appellee. Appellant's motions to dismiss the complaint, to set aisde the default and default judgment and to quash levy of execution were also denied by this order.

The appeal before us arose out of a complaint filed in superior court by appellee, seeking to enforce an Ohio municipal court judgment entered in favor of appellee—an accounting firm—and against appellant Moqui, Inc. A default was entered when the appellant failed to answer within twenty days and a judgment was subsequently entered on the same day that appellant filed a motion to dismiss. Thereafter the trial court set aside the default, but later reinstated it. This appeal followed.

The basis for the motion to dismiss and the primary question on appeal is whether the Ohio judgment is enforceable in Arizona if, as appellant alleges, the Ohio court did not have personal jurisdiction over the defendant. We hold that the Ohio court did not have personal jurisdiction over the defendant and the judgment rendered in Ohio was void.

In 1969 the appellant, Moqui, Inc. was interested in applying for a Securities and Exchange Commission registration for a public stock issuance. To obtain the registration Moqui, Inc. would be required to submit a complete financial analysis by an independent accounting firm. Moqui's attorney, Horace L. Lurie, an Arizona attorney, suggested the firm of Ambrose and Rosenfield & Company of Cleveland, Ohio to conduct the audit.

In March, 1969 Mr. Lurie traveled to Cleveland to negotiate with the appellee for its services in the above matter. Later that year representatives of the accounting firm came to Arizona and after a review of Moqui's books and records agreed to render the required services. The agreement was consummated in Mr. Lurie's Phoenix office with the officers of Moqui, Inc. present. At that same meeting the Board of Directors of Moqui, Inc. passed a resolution to employ the appellee in accordance with the agreement.

An action was commenced in Ohio by appellee when appellant failed to forward the remainder of the fees allegedly owed. Appellant did not appear in this action and judgment was entered against it. This judgment was then presented for enforcement in the superior court of Arizona in Maricopa County by way of the complaint mentioned above.

■ We will first consider the question of the jurisdiction of the Ohio court in rendering the judgment. In determining whether the Ohio court had personal jurisdiction we must first look to the law of the forum state and its "long-arm" statute, Section 2307.382, Ohio Rev.Code, and second to the due process requirements of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny.

Ohio's "long-arm" statute, Section 2307.382 states in pertinent part:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state . . ."

This statute has been interpreted in Ohio to allow assertion of personal jurisdiction in any case which is within the limits of the due process clause of the Fourteenth Amendment. Didactic Corp. v. Welch Scientific Co., 291 F.Supp. 890 (N.D.Ohio, E.D., 1968). Thus a non-resident defendant need only have satisfied the "minimum contacts" requirement of International Shoe Co. v. Washington, supra, to be subject to personal jurisdiction in Ohio.

Department B of this Court recently conducted an in-depth analysis of International Shoe Co. v. Washington, supra, and the cases coming after it dealing with the "minimum contacts" requirement. See Powder Horn Nursery, Inc. v. Soil & Plant Lab., Inc., 20 Ariz.App. 517, 514 P. 2d 270 (1973). As the opinion points out, the cases following International Shoe Co. v. Washington, supra, have gradually reduced the amount of contact required of a non-resident to submit him to the jurisdiction of a state court. See, e. g., McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, there remains the concept of "fair play and substantial justice" to deny

the assertion of jurisdiction in appropriate cases. International Shoe Co. v. Washington, supra. In the case before us we do not believe the requisite minimum contacts were present and for the Ohio court to exercise jurisdiction under these facts violates "traditional notions of fair play and substantial justice," supra.

We draw our conclusion from a recent Ohio Federal District Court decision which, although decided after the judgment in question, deals with substantially similar facts and applies the law in effect prior to the judgment. M & W Contractors, Inc. v. Arch Mineral Corp., 335 F.Supp. 972 (S.D. Ohio, E.D., 1971). In that case it was uncontested that all the negotiations prior to execution of the agreement, which consisted of at least six meetings, took place in Ohio. Also, it was uncontested that the execution of the contract took place in Ohio. The Court, however, determined that "minimum contacts" were not present and thus personal jurisdiction could not be asserted under Section 2307.382, Ohio Rev. Code. The decision goes on to explain that the case involved a non-resident *buyer* and as such more contacts were required for jurisdiction than had the defendant been a *seller* of goods or services seeking a market in Ohio. Oswalt Industries v. Gilmore, 297 F.Supp. 307 (D.Kan., 1969); Fourth Northwestern National Bank v. Hilson Industries, 264 Minn. 110, 117 N. W.2d 732 (1962).

■ In the case before us the appellant would be characterized as a non-resident buyer in that its purpose in sending Mr. Lurie to Ohio was to engage the services of the appellee should Mr. Lurie determine that the appellee was suited for the service required. Further, these services were to be performed, for the most part, in Arizona and not in Ohio. Also, it was not contemplated that Moqui would have any further contact with the appellee in Ohio. In light of the decisions we have considered, we cannot say that the appellant transacted sufficient business in Ohio to allow Ohio to submit it to personal jurisdiction under its long-arm statute. Therefore any judg-

ment rendered thereon would violate due process and would be void.

■ In the case before us, the order reinstating the default judgment stated that the default could not be set aside because the appellant had failed to present a meritorious defense to appellee's claim. We have found from the facts that not only does the appellant have a defense to the enforcement of the Ohio judgment, i. e., its invalidity, but also it has shown us a meritorious defense on the original claim itself—that the appellee had failed to perform and refused to perform as agreed and the performance which had been tendered was unacceptable to the SEC and was substantially in error.

■ In addition to showing a meritorious defense to the claim, a party seeking to set aside a default judgment must show that his failure to appear timely was based on mistake, inadvertence, surprise, or excusable neglect. 16 A.R.S. Rules of Civil Procedure, rule 60(c). Hendrie Buick Co. v. Mack, 88 Ariz. 248, 355 P.2d 892 (1960). In the case before us the appellant's attorney argues that his untimely response was excusable neglect and thus the trial court improperly refused to set aside the default. We agree.

■ There were two processes served in the Arizona action: One upon Moqui's statutory agent on May 4, 1971 and the second on officers of Moqui on May 14, 1971. The appellant's attorney received only the latter and responded within twenty days of that service, not knowing of the earlier service on Moqui's agent. The Agent, Mr. Lurie, did not answer because of an ethical dilemma and did not timely inform counsel of the service.

The Arizona Supreme Court has stated that the test of what is "excusable neglect" depends on whether the neglect or inadvertence is such as might be the act of a reasonably prudent man under the same circumstances. Walker v. Kendig, 107 Ariz. 510, 489 P.2d 849 (1971); Coconino Pulp & Paper Co. v. Marvin, 83 Ariz. 117, 317 P.2d 550 (1957).

**568**

The appellate courts of this state have announced many times the policy that lawsuits should be tried on the merits and not on technicalities. Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 (1963); Phillips v. Findlay, 19 Ariz.App. 348, 507 P.2d 687 (1973). And "[w]here the circumstances lead the court to hesitate upon a motion to vacate the default, the doubt should be resolved in favor of the motion." Phillips v. Findlay, supra, at p. 354, 507 P.2d at 693.

In our opinion under the facts of this case, appellant's untimeliness is excusable and his defenses are meritorious. We therefore reverse the order reinstating the default and instruct the trial court to set aside the default and default judgment, to quash the levy of execution and to proceed in a manner not inconsistent with this opinion.

DONOFRIO, P. J., and STEVENS, J., concur.